IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Maxwell E. Sipes, | Case No. 8:18-cv-02842-DCC |
| Petitioner, | |
| v. | **ORDER** |
| Warden Tyger River Correctional Institution, | |
| Respondent. | |

Petitioner, proceeding pro se, is seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. ECF No. 1. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to United States Magistrate Judge Jacquelyn D. Austin for pre-trial proceedings and a Report and Recommendation ("Report"). On May 9, 2019, Respondent filed a Motion for Summary Judgment. ECF No. 39. Petitioner filed a Motion to Amend the Petition and a Motion to Strike on July 8, 2019. ECF No. 45. He later filed a Response in Opposition to the Motion for Summary Judgment, and Respondent filed a Reply. ECF Nos. 50, 53. Respondent filed a response and an amended response to Petitioner's Motions; Petitioner filed a Reply. ECF Nos. 47, 49, 54. On October 15, 2019, the Magistrate Judge issued a Report recommending that the Motion for Summary Judgment be granted, the Motion to Amend be denied, and the Motion to Strike be granted. ECF No. 61. Petitioner filed objections and a Motion for

1

Certificate of Appealability; Respondent filed objections and a reply to Petitioner's objections and Motion. ECF Nos. 63, 70, 71, 74.

## APPLICABLE LAW

### *Standard of Review*

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. See *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b). The Court will review the Report only for clear error in the absence of an objection. See *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (citation omitted)).

### *Habeas Corpus*

Petitioner's claims are governed by 28 U.S.C. § 2254(d), which provides that his petition cannot be granted unless the claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

2

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *Id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and

4

prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 298 (1989).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931

(4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## **DISCUSSION**

Petitioner raises three grounds in his Petition. The Magistrate Judge found that Ground One is procedurally defaulted, Ground Two should be denied on the merits, and Petitioner voluntarily dismissed Ground Three. Petitioner and Respondent object to portions of the Magistrate Judge's recommendations. The Magistrate Judge provided a thorough recitation of the procedural history and the relevant law, including the summary judgment standard, which the Court incorporates into this Order by reference.

*Ground One*

In the Petition, Petitioner raises Ground One as follows,

**GROUND ONE:** The lower court did err in denying the Appellant's motion for mistrial by violating his 5th and 14th Amendment Rights.

*Supporting facts*: During cross-examination of Appellant's ex-wife was being questioned by defense attorney concerning family court issues is when she went on a Rabbit trail stating Appellant quit his job and ran from police investigator [and] from being questioned by law enforcement in regards to the allegation of sexual abuse. Defense then made a motion for mistrial due to the Appellant's 5th amendment being violated. The judge dismissed the jury while this issue was being discussed. The judge denied the motion for mistrial, granted curative instruction to the jury, but never given, nor was there a follow-up "objection by defense."

ECF No. 1 at 5. This claim was raised to the South Carolina Court of Appeals on direct appeal; the Court of Appeals affirmed because the claim was not preserved under state law. App. 810–11. Because this ground was not fairly presented to the Supreme Court of South Carolina, it is procedurally barred from federal habeas review absent a showing of cause and actual prejudice.[1] *See Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless

---

[1] Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by a petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).

the prisoner can demonstrate cause . . . and actual prejudice . . . or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."). In his Response in Opposition to the Motion for Summary Judgment, Petitioner concedes that this claim is procedurally barred.[2] ECF No. 50 at 3.

Petitioner has moved to amend this ground to assert a claim for ineffective assistance of counsel. ECF No. 45. As explained by the Magistrate Judge, because his time to amend as a matter of course has expired, he is entitled to amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)(B). While the text of Rule 15(a)(2) requires that the Court "freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "a district court may deny leave to amend if the amendment 'would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile,'" *United States ex rel. Nathan v. Takeda Parm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). The Magistrate Judge recommends that

---

[2] In the Report, the Magistrate Judge states that, "Petitioner concedes that Ground One is procedurally barred, and he does not argue that he can establish cause to overcome the procedural bar of Ground One, nor does he assert a fundamental miscarriage of justice has occurred." ECF No. 61 at 17. In his objections, Petitioner states that the Magistrate Judge erred and a miscarriage of occurred and that he is actually innocent. ECF No. 71 at 1–3. However, he does not assert that Ground One, as raised in the Petition, is not procedurally defaulted and continues to argue that he should be permitted to amend it. Accordingly, the Court takes note that Petitioner believes a miscarriage of justice occurred and that he is actually innocent; however, those arguments do not affect the Court's analysis of whether Ground One is procedurally defaulted.

the motion be denied because amendment would be futile insofar as the claim Petitioner proposes to add would fail to satisfy the standards that the AEDPA requires must be satisfied for the federal court to grant habeas relief. ECF No. 61 at 18.

Petitioner objects to the Magistrate Judge's recommendation and argues that he should be allowed to amend his ground because his "trial counsel was ineffective for failing to preserve a Fifth Amendment violation issue for appellate review when he failed to seek a curative instruction."[3] ECF No. 71 at 1. The Court disagrees.

Petitioner's claim for ineffective assistance of counsel was raised to and ruled upon by the post-conviction relief ("PCR") court. App. 828–29. The PCR court found that Petitioner failed to satisfy either *Strickland*[4] prong. The PCR court noted trial counsel's

---

[3] After Petitioner's ex-wife testified, trial counsel moved for a mistrial on the basis that the witness commented on Petitioner's assertion of his Fifth Amendment rights. App. 194. After hearing argument from both sides, the trial judge denied the motion, stating, "'I don't think that it has risen to the degree of prejudice that would make it impossible for the Defendant to have a fair trial. However, if the Defendant wants, I will give a curative instruction that there's no need for the Defendant to ever present a defense.'" App. 198–99. The trial judge never gave such an instruction and trial counsel did not object to the judge's failure to give it.

[4] In *Strickland v. Washington*, the United States Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. 668, 687 (1984). To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential,"

testimony that he did not specifically recall this instance but that it was his general practice to consider whether the potential benefit of a curative instruction would be worth drawing the jury's attention to the issue. App. 828 (referencing testimony found at App. 719). The PCR court found that concern for the possibility that the harm caused by drawing the jury's attention to the issue outweighed the expected positive effect of the instruction was a valid reason, under the circumstances, for failing to request the instruction. The PCR court further found that, even if counsel had preserved the issue, the trial court's decision would likely not have been reversed on appeal and thus any ineffectiveness by counsel was not prejudicial.

As noted by the Magistrate Judge, to prevail on his claim that trial counsel was ineffective, Petitioner would need to establish that fair-minded jurists could not conclude that the PCR court's findings on each of the *Strickland* prongs were correct. *See Harrington*, 562 U.S. at 101–02. Petitioner has failed to carry that burden. Accordingly,

---

and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

his objection[5] is overruled and the motion to amend is denied as futile. As previously stated, Ground One is procedurally defaulted.[6]

*Ground Two*

In Ground Two, Petitioner raised the following,

**GROUND TWO**: Ineffective assistance of counsel failure to timely obtain medical/psychological records.

*Supporting facts*: Trial counsel was ineffective for failing to "timely obtain and utilize medical records, properly cross-examine the state's expert, and use those records in support of the defense theory of the case.

ECF No. 1 at 6. The Magistrate Judge addressed this claim on the merits and determined that Petitioner is not entitled to relief on this Ground.

In his objections, Petitioner asserts that the Magistrate Judge erred in finding trial counsel was not ineffective because his failure to timely acquire the victim's complete medical records meant that they could not be used at trial. ECF No. 71 at 3–5.

---

[5] Petitioner also objects to any reference to this Ground as a new claim—he contends that he misstated his claim in the Petition and that it should be considered an amendment rather than a completely new argument. The Court notes that while Respondent classifies this as a new claim, the Magistrate Judge and the undersigned have consistently referred to this issue as an amendment.

[6] The Magistrate Judge notes that, because she determined that Petitioner cannot satisfy the AEDPA standard regarding the proposed amendment to the Petition, she declined to address Respondent's other arguments as to why the Motion to Amend should be denied. ECF No. 61 at 22 n. 10. Respondent's sole objection is that the Magistrate Judge failed to consider his additional arguments as to why the Motion to Amend should be denied. ECF No. 63. Like the Magistrate Judge, the Court finds that it is unnecessary to rule on Respondent's additional arguments. Accordingly, this objection is overruled.

Specifically, Petitioner contends that the jury was only told that the victim exhibited borderline personality traits while the medical records reveal that she had been diagnosed with borderline personality disorder. He further contends that the missing medical records provided more relevant information with respect to the victim's history of constipation and bulimia.[7]

---

[7] The Magistrate Judge summarized contents of the additional records as documenting that,

> [T]he victim had borderline personality traits, oppositional defiant disorder, dysthymic disorder, major depressive disorder, anxiety disorder, and bipolar disorder, that she had a history of stealing, experiencing anger, cutting herself, and acting spitefully and vindictively, and that she once took a knife to school. [App. 658–61, 664–65.] The records also indicated that she had a history of binging and purging, laxative abuse, and compulsive overeating, that she had had problems with hallucinations and bizarre and paranoid ideations and suffered from depression, anorexia, and bulimia. [App. 671–74.] The records noted she had taken Trazodone, Depakote, Effexor, Luvox, Adderall, Risperdal, Ranitidine, Celexa, Zantac, Zyrtec, Augmentin, Geodon, Ambien, Remeron, and Paxil. [App. 660–64, 667–69.] They also provided documentation of some rectal bleeding. One note states, "GI probs, rectal . . . bldg, 2/02" followed by the quotation, "It just stopped." [App. 665–66, 668–69 (internal quotation marks omitted).] There also was a September 25, 2002, note for chronic diarrhea and a note that she received 30 ccs Milk of Magnesia for constipation between April 30, 2002, and May 1, 2002. [App. 668, 670, 693.] The additional records also indicated that the victim had a history of suffering physical and emotional abuse. [App. 672.]

The PCR court addressed trial counsel's performance under the standard set forth in *Strickland*. App. 821–29. With respect to Ground Two, the PCR court stated,

> Applicant claims trial counsel was ineffective for failing to "timely obtain and utilized medical records, properly cross-examine the State's expert, and use those records in support of the defense theory of the case." (PCR Hearing Tr. p. 4, l. 7-p. 5, l. 10.)
>
> At the PCR hearing, trial counsel testified he was not aware he was missing some of the medical records until one of his consultants pointed out that there should be more records. In response, trial counsel made efforts to secure the medical records and did secure them before the end of trial. Through direct or cross-examination, the content of the medical records that supported the defense's theory of the case was presented to the jury. Counsel also testified there were strategic considerations as to what he chose to highlight and how he chose to highlight the information in the medical records. (PCR Hearing Tr. p. 62, l. 8-p. 68, l.13; p. 67, l. 24-p.68, l.1.)
>
> A review of the trial transcript shows the State's witness, Dr. Payne, testified his belief that the rectal prolapse in the victim was caused by forcible rape rather than anything else was related, at least in part, to his physical examination of the victim. (Trial Tr. p. 70.) Dr. Payne testified he did not believe the medication or constipation caused her prolapse. (Trial Tr. pp. 74-75.) Trial Counsel challenged Dr. Payne's limited review of victim's medical records, and also presented an expert, Dr. Lund, to challenge Dr. Payne's physical examination of the victim and resulting conclusion that forcible rape had caused her rectal prolapse.

---

ECF No. 61 at 29 n. 14. Petitioner does not object to this summary, other than to argue that the medical records established that the victim was diagnosed with borderline personality disorder.

13

> This Court finds Applicant showed additional evidence may have been helpful and strengthened his defense, particularly in cross-examining the State's expert; however, the Court finds the evidence presented falls short of meeting Applicant's burden. Dr. Payne was questioned about his lack of review of the patient's medical records before reaching a conclusion, and he was questioned about the victim's medications and the possibility of chronic constipation causing the prolapse. Applicant's own medical expert at the PCR hearing agreed that a review of the victim's medical records did not show evidence of either stool counts or complaints of abdominal pain; the two indicators Dr. Rubel stated were associated with chronic constipation that could cause rectal prolapse. (PCR Hearing Tr. p. 131, ll. 18-24; p. 132, ll. 1-11.)
>
> Accordingly, this Court finds Applicant has failed to prove the first prong of the *Strickland* test: that Counsel failed to render reasonably effective assistance under prevailing professional norms. Applicant failed to present specific and compelling evidence that Counsel committed either errors or omissions in his representation of Applicant.

App. 824–26.

The PCR court's denial of Petitioner ineffective assistance of counsel was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate that the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a different result from Supreme Court precedent.

14

Moreover, the record supports the PCR court's decision. The Magistrate Judge provides a summary of some of the relevant trial testimony, which the Court specifically incorporates by reference. See ECF No. 61 at 25–29.

At the PCR hearing, trial counsel testified that after Cindy Stichnoth[8] reviewed the medical records he had received, she informed him that there should be more records. App. 638. Trial counsel then secured a court order to obtain the records ; he received the additional records during the trial. App. 638–39. He testified at PCR that, although he received the records after Dr. Payne and Dr. Lund had testified at trial, he did not think having the records would have changed Dr. Payne's testimony. App. 650–51; see App. 75. Trial counsel confirmed that he received the records at a point in the trial where, if he thought they included something material, he could have recalled Dr. Lund to the stand. App. 680–81. Trial counsel also confirmed that Stichnoth had reviewed all of the victim's medical records when she testified. App. 681. Trial counsel also testified that some things in the additional medical records "cut against" the defense and some things helped and that, strategically, "when [he] see[s] stuff that's cutting both ways . . . [he] do[es]n't know that [he] want[s] the jury to hear that." App. 697–98.

The PCR court's determination that trial counsel's performance did not fall below the *Strickland* standard in deciding that the risk that using the additional records would harm his case outweighed the potential benefits was neither contrary to nor an

---

[8] Cindy Stichnoth is a therapist specializing in "assessing and treating sexual behavior issues," including conducting forensic interviews. App. 359–61.

15

unreasonable application of clearly established Supreme Court precedent. Counsel could have reasonably determined that the benefits of using the records was limited. Moreover, counsel was able to show the victim's mental health issues by other means that avoided the potential for harm that would have come with the use of the additional records. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (internal citation omitted)). Accordingly, the undersigned concludes that fairminded jurists could conclude that the PCR court's decision on this point was correct.

### *Ground Three*

After Respondent asserted that Ground Three was procedurally defaulted, Petitioner moved to strike this Ground. ECF Nos. 38, 45. Accordingly, the Magistrate Judge recommends that the Motion to Strike Ground Three be granted. Petitioner has

not objected to this recommendation. Accordingly, upon review of the record, the applicable law, and the Report, the Court agrees and adopts this recommendation of the Magistrate Judge. Petitioner's Motion to Strike Ground Three is granted.

## CONCLUSION

Wherefore, based upon the foregoing, Petitioner's Motion to Strike Ground Three [45] is **GRANTED**; Petitioner's Motion to Amend his Petition [45] is **DENIED**; and Respondent's motion for summary judgment [39] is **GRANTED** and the Petition is **DENIED**.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c) (2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c) (3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard

for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.[9]

**IT IS SO ORDERED**.

                                                                                                                   s/ Donald C. Coggins, Jr.
                                                                                                                    United States District Judge

January 23, 2020
Spartanburg, South Carolina

---

[9] The Court considered Petitioner's Motion for Certificate of Appealability [70] in its decision. That Motion is **DENIED**.